IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NEXSTAR BROADCASTING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 3:12-CV-2380-P |
| | § | |
| TIME WARNER CABLE, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Now before the Court is Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, filed July 16, 2012. (Doc. 8.) Defendant filed a Response on July 26, 2012. (Doc. 15.) Plaintiff filed a Reply on July 30, 2012. (Doc. 23.) After reviewing the parties' briefing, the evidence, and the applicable law, the Court DENIES Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.

I.  **Background**

This case involves the alleged misappropriation of the broadcast signals of three television stations (the "Stations") owned and operated by Plaintiff Nexstar Broadcasting, Inc. ("Nexstar"). Specifically, Nexstar alleges that Defendant Time Warner Cable Inc. ("Time Warner") has been retransmitting the station signals of WBRE-TV (the NBC affiliate located in Wilkes-Barre, Pennsylvania), WTWO (the NBC affiliate located in Terre-Haute, Indiana), and WROC-TV (the CBS affiliate located in Rochester, New York) outside of their local markets and into five distant markets ("Distant Markets"). Nexstar contends that this rebroadcasting is in direct violation of the Retransmission Consent Agreement ("RCA") the parties entered into in June 2009. Nexstar argues that the RCA only permits Time Warner to transmit the signals of the

relevant stations to a Time Warner system "located in the Television Market of a Station." Nexstar contends that Exhibit A of the RCA identifies the "markets" of the Stations in which the signals may be retransmitted and that none of the markets identified in Exhibit A are the Distant Markets.

## II. Legal Standard

### a. Preliminary Injunction Standard

Federal Rule of Civil Procedure 65 provides that the Court may issue a preliminary injunction to restrain or require certain acts. For the grant of injunctive relief, a movant must demonstrate the following equitable factors: "(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest." *La Union del Pueblo Entero v. FEMA*, 608 F.3d 217, 219 (5th Cir. 2010). "A preliminary injunction is an extraordinary remedy." *Id.* "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Thus, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* The Court may accept otherwise inadmissible evidence, including hearsay evidence, "in the form of deposition transcripts and affidavits." *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993).

Federal Rule 65(a) further provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." Fed. R. Civ. P. 65(a). The Fifth Circuit has interpreted this to mean that "where factual disputes are presented, the parties must be given a fair opportunity

and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted." *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005) (*quoting Kaepa, Inc. v. Achilles Corp.*, 76 F.2d 624, 628 (5th Cir. 1996)). If no factual disputes exist in regard to the preliminary injunction, an oral hearing is not required. "[U]nder such circumstances the parties need only be given 'ample opportunity to present their respective views of the legal issues involved.'" *Kaepa*, 76 F.2d at 628 (*quoting Commerce Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 342 (5th Cir. 1984)).

### i. Substantial Likelihood of Success: Breach of Contract

Nexstar argues that there is a substantial likelihood that it will succeed on its breach of contract claim. The contract at issue, the RCA, is governed by and construed under "the laws of the State of Texas subject to applicable provisions under the [Communications] Act and the FCC Rules." (Pl.'s Compl. Ex. 1, § 17.) At issue is whether the RCA authorizes Time Warner to retransmit Nexstar's television signals into Distant Markets. Nexstar claims that the RCA's language restricts Time Warner's rights to retransmit signals to only those Time Warner cable systems located in the same television market of a given station. Time Warner counters that the RCA does not contain such geographic restrictions.

Under Texas law, a party can establish a breach of contract claim by demonstrating: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W. 3d 741, 785 (Tex.App.-El Paso 2000, no pet.) The parties do not dispute the existence of a valid contract, the RCA, or that Nexstar performed its obligations under the RCA by providing Time Warner with access to its stations' signals. Therefore, in order to succeed on the first prong of the preliminary injunction standard,

Nexstar must demonstrate that it can meet the third and fourth prongs of its breach of contract claim; namely, that Time Warner breached the RCA when it retransmitted the signals to Distant Markets and that damages to Nexstar resulted from that breach.

### 1. Interpretation of the RCA

"In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (*citing Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "When the language is plain, it must be enforced as *written*." *Phillips v. Union Bankers Ins. Co.*, 812 S.W.2d 616, 618 (Tex. App.—Dallas 1991, no writ) (emphasis in original); *see Eaton v. Courtaulds of N. Am.*, 578 F.2d 87, 90 (5th Cir. 1978) (The court should, if possible, "analyze a contract's meaning by its language without resort to extrinsic considerations."). "Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole..." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "A written contract is ambiguous if its language is 'subject to two or more reasonable interpretations' but is not ambiguous if it is 'so worded that it can be given a definite or certain legal meaning.'" *In re Nat'l Gypsum Co.*, Case 390-37213-SAF-11, 2002 WL 1359715, at *6 (N.D. Tex. June 18, 2002) (*quoting Nat'l Union Fire*, 907 S.W.2d at 529); *see also Litton v. Hanley*, 823 S.W.2d 428, 430 (Tex. App.—Houston [1st Dist.] 1992, n.w.h.) (If a contract "can be given certain definite meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."). "A contract is not ambiguous merely

because the parties to an agreement proffer conflicting interpretations of a term." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (*quoting Int'l Turbine Servs.*, 278 F.3d at 497).

"[T]he interpretation of an unambiguous contract is a question of law for the court to decide by 'looking at the contract as a whole in light of the circumstances present when the contract was entered.'" *Id.* (*quoting Phila. Am. Life Ins. Co. v. Turner*, 131 S.W.3d 576, 587 (Tex. App.—Fort Worth 2004, no pet.)). "When the terms of a contract are plain and unambiguous, extrinsic evidence is not admissible to show the parties' intent at the time of making the contract." *Int'l Ins. Co. v. RSR Corp.*, Case 3:00-cv-0250-P, 2002 WL 493121, at *5 (N.D. Tex. Mar. 27, 2002) (Solis, J.) *amended on other grounds by* 2003 WL 2158290 (N.D. Tex. July 2, 2003) (*citing R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980)). "Parol evidence is not admissible for the purpose of creating an ambiguity." *Nat'l Union Fire*, 907 S.W.2d at 520. If the court "determine[s] the contract to be ambiguous, the determination of the parties' intent from parole evidence is a question of fact." *Matter of Tex. Gen. Petroleum Corp.*, 52 F.3d 1330, 1335 (5th Cir. 1995) (*citing In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir. 1981)).

After reviewing the RCA, the parties' briefing, and the relevant case law, the Court finds the RCA is not ambiguous as a matter of law. The determination of whether a contract is ambiguous is not based on whether the parties have conflicting interpretations of a clause or a term. *Gonzalez*, 394 F.3d at 392. The Court views the contract as a whole and determines the RCA can be given "certain definite meaning or interpretation." *Litton*, 823 S.W.2d at 430.

### 2. Analysis

The Court now proceeds to interpret the RCA as a matter of law based on the plain meaning of the terms and clauses used and without resort to extrinsic evidence. *See Int'l Ins.*

*Co.*, 2002 WL 493121, at *5 (stating that extrinsic evidence should not be used when contract is unambiguous on its face). The parties focus on Sections 1 and 2 of the RCA to support their respective interpretations. Section 1, entitled "Retransmission Consent," states:

> Owner hereby gives Operator its consent, pursuant to Section 325(b) of the [Communications] Act and the FCC Rules, to the nonexclusive retransmission of the entire broadcast signal of each Station (the "Signal") over each System pursuant to the terms of this Agreement. Operator agrees to retransmit the Stations' Signals subject to the requirements of Section 2 below.

(Pl's. Compl., Ex. 1.) "System" is defined as including all cable systems "owned, operated or managed by Time Warner. (Ex. 1, RCA Definitions Section.) Section 2(a), entitled "Carriage," reads in pertinent part: "[E]ach Upgraded System that is located in the Television Market…of a Station shall retransmit, at its own expensive, such Station's Primary Program Transport Stream…" (*Id.*) Finally, the parties focus on Section 11(b), entitled "Termination," which states that Time Warner may discontinue carriage of any Program Transport Stream if "(iii) the System carrying such Program Transport Stream is located outside such Station's Television Market." (Pl.'s Compl., Ex. 1, §11(b)(iii).)

Nexstar argues that since Section 1 incorporates Section 325(b) of the Communications Act and the FCC rules, that retransmission consent must be "specific." Nexstar contends that the RCA is specific in that it refers to specific stations and each station's local market to be retransmitted over "each" Time Warner system in that market. (Pl.'s Br. at 7.) Moreover, Nexstar alleges that Exhibit A serves to narrow its retransmission consent by listing the markets in which specific covered stations will have their signals retransmitted by Time Warner systems.

Nowhere in the RCA does Nexstar limit its retransmission consent. While the geographically limiting language, "located in the Television Market of a Station," is present in

the RCA, it is not contained in the section addressing retransmission consent; rather, it appears when discussing Time Warner's carriage obligations under Section 2(a). Section 2(a) only applies to "Upgraded Systems" which are defined as "a System that has an activated bandwidth of at least 750 Mhz, and has launched and distributes…over the air digital broadcast signal." (Ex. 1, Definitions (h).) Therefore, it appears that the language limiting the broadcast to the "Television Market" only pertains to the Upgraded Systems and Time Warner's relevant carriage obligations; in other words, the markets where Time Warner is required to carry Nexstar. This limiting language is not present when Nexstar gives its retransmission consent under Section 1. In fact, it is specifically omitted when describing the "Retransmission Consent" under Section 1.

When construing a contract, the Court must presume that omissions are purposeful. *Pioneer Chlor Alkali Co. v. Royal Indem. Co.*, 879 S.W. 2d 920, 938 (Tex.App.- Houston [14th Dist.] 1994) (citing *Borders v. KRLB*, 727 S.W. 2d 357, 359 (Tex.App.—Amarillo 1987, writ re'f n.r.e.)). Thus, when "Television Market" is omitted from Section 1, the Court must presume that it was the parties' intention to do so. The RCA, read in its entirety, demonstrates that the parties knew how to include geographic limitations when desired, such as when describing Time Warner's obligations under Section 2(a). Accordingly, the Court must presume that such an omission under "Retransmission Consent" was purposeful. Therefore, the RCA does not limit Time Warner's abilities to retransmit the signals to any particular region.

Moreover, Section 11, entitled "Termination," provides Time Warner the right to discontinue transmissions to out-of-market (also referred to as "Distant Market") locations. (RCA, § 11(b)(iii).) An express grant to discontinue out of market transmissions implies that Time Warner has the right to retransmit the signals to Distant Markets. If Time Warner did not have such right, Section 11 would be superfluous. Therefore, the RCA does not place

geographic limitations on Time Warner's retransmission rights. Accordingly, since it does not appear that Time Warner has breached the RCA, Nexstar has not shown a substantial likelihood of succeeding on the merits of its breach of contract claim. The Court need not address the last prong of a breach of contract claim.

In addition, Nexstar's copyright claim appears to hinge on its assertion that Time Warner's retranmission is outside the scope of Nexstar's consent in the RCA. (Pl.'s Compl. at ¶ 67.) Since the Court found that it does not appear that Time Warner breached the RCA, Nexstar has not demonstrated that it will succeed on its copyright claims. Accordingly, Nexstar's Motion for Preliminary Injunction is DENIED.

### III.   Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.

**IT IS SO ORDERED.**

Signed this 5th day of ~~August,~~ September, 2012.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE